### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

DELANDRO WASHINGTON                    CIVIL NO. 21-0196

VERSUS                                 JUDGE MAURICE HICKS, JR.

MICHAEL JONES, ET AL.                  MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court is the second Partial Motion to Dismiss filed by Defendants Sergeant Michael Jones ("Sergeant Jones"), Chief of Police Ben Raymond ("Chief Raymond"), and the City of Shreveport ("the City") (collectively referred to as "the Defendants"), in response to Plaintiff Delandro Washington's ("Washington's") Amended Complaint (Record Document 11). The Defendants re-urge their original arguments to dismiss Washington's excessive force, equal protection, and unlawful policies and practices, or <u>Monell</u> liability, claims under 42 U.S.C. § 1983 ("Section 1983"). <u>See</u> Record Document 6.[1] Washington opposes the Motion. <u>See</u> Record Document 16. For the reasons that follow, the Defendants' Motion for Partial Dismissal is **GRANTED IN PART** and **DENIED IN PART**.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

In January 2019, Washington separated from his wife. Later that year, she filed a complaint against Washington with the Shreveport Police Department ("SPD"), Washington's employer, alleging the two exchanged text messages arguing over

---

[1] Washington's Complaint and Amended Complaint also assert claims of false arrest under Section 1983 in addition to state tort claims of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, and defamation. <u>See</u> Record Documents 1 & 11. The instant Motion does not seek dismissal of these claims.

[2] The Court must accept all factual allegations as true, however, the facts set forth in the factual background shall not be taken as binding factual finding made by the Court. <u>See</u> <u>St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.</u>, 937 F.2d 274, 279 (5th Cir. 1991).

visitation of their child. Sergeant Jones sent a domestic report based on the ex-wife's allegations to the district attorney, who informed Sergeant Jones that he refused to prosecute Washington for his alleged conduct. Washington's ex-wife ultimately filed a second complaint against him in January 2020 which prompted an interview of Washington by Sergeant Jones.[3] During the interview on January 23, 2020, Sergeant Jones searched through Washington's phone with his consent and then kept the phone.

On January 24, 2020, Washington was asked to report to the police station where he was placed on administrative leave with pay. Administrative leave requires Washington to report to the station when requested and turn in his SPD-issued handgun. See Record Document 11 at 2.  Later that evening, Washington's girlfriend, also an SPD Officer, arrived at their apartment where she was surrounded by other members of the SPD. At that point, the officers entered the apartment to arrest Washington.

While Washington was home asleep, members of the SPD, including Sergeant Jones, entered Washington's bedroom with handguns pointed at him. Washington was handcuffed and escorted outside without a coat while Sergeant Jones searched Washington's apartment for weapons. Sergeant Jones carried out the search and arrest without a warrant.

Washington filed the instant suit against Sergeant Jones, Chief Raymond, in both their individual and official capacities, and the City in January 2021.[4] In his Original Complaint (Record Document 1), Washington alleges federal claims of false arrest,

---

[3] The exact nature of Washington's purported conduct that warranted the domestic report and the interview is not explained in either the Original or the Amended Complaint.

[4] Washington alleges that after filing this lawsuit, he was placed on supervisory observation which requires a supervisor to accompany Washington when he responds to calls and closely examine his reports for three months.

excessive force, equal protection, retaliation, and unlawful practices and policies (<u>Monell</u> liability) against the Defendants pursuant to Section 1983. Additionally, Washington brings state tort claims of false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, and defamation.

The Defendants filed a partial motion to dismiss (Record Document 6), seeking dismissal of Washington's excessive force, equal protection, retaliation, and unlawful practices and policies (<u>Monell</u>) claims. This Court denied their initial motion and permitted Washington to amend his complaint to further detail his excessive force and equal protection claims. In response to Washington's Amended Complaint (Record Document 11), the Defendants refiled their Motion for Partial Dismissal (Record Document 13) which Washington again opposes. <u>See</u> Record Document 16.

## LAW AND ANALYSIS

Federal Rule of Civil Procedure 8(a)(2) requires a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Essentially, the standard for the adequacy of complaints is one of "plausibility." <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id</u>. at 555–56, 127 S.Ct. at 1965. If a pleading only contains "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it does not meet the standards of Rule 8(a)(2). <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citation omitted).

In conjunction with Rule 8, Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a plaintiff's pleading for failure to state a claim upon which relief may be granted. When reviewing a claim, a court does not evaluate a plaintiff's likelihood for success. Instead, the Court determines whether a plaintiff's claim is legally cognizable. See Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are to allow only those complaints that are facially plausible to survive such a motion. See Iqbal, 556 U.S. at 678–79, 129 S.Ct. at 1949.

Presently, the Defendants seek partial dismissal of some of Washington's federal law claims. Notably, Washington brings claims against Sergeant Jones and Chief Raymond in their individual and official capacities. The Court will first address each individual capacity claim before discussing municipal liability.

1. Excessive Force

Washington contends that Sergeant Jones, in his individual capacity, used excessive force while arresting him in violation of his Fourth Amendment right. See Record Document 1 at 7. According to Washington, Sergeant Jones forcibly entered his home without consent with his gun drawn along with other officers holding guns. Washington states that he feared for his life when he woke up to find guns in his face because he believed Sergeant Jones would shoot him if he made any movement that could be interpreted as aggressive. See Record Document 11 at 3. Washington was then escorted outside in handcuffs that were too tight and caused him pain. He was forced to stand outside in the cold without a coat or shoes. Since that night, Washington has

4

continued to experience fear, apprehension, and distrust of his fellow officers, causing him great stress, and interfering with his work. See id.

The Defendants contend that Washington's claim of excessive force cannot overcome the protection of qualified immunity. There exists no established precedent indicating that a reasonable officer would have known that pointing a firearm at a suspect who is a potentially armed police officer during an arrest violated Washington's Fourth Amendment right. See Record Document 13-1 citing Lincoln v. Turner, 874 F.3d 833, 851 (5th Cir. 2017). Furthermore, the Defendants argue that Washington fails to allege any injury beyond the discomfort he experienced while handcuffed and he lacks support for his allegation that he suffered psychological injury.

An excessive force claim requires the plaintiff show that while he was being arrested, he suffered "1) an injury that 2) resulted directly and only from the use of force that was excessive to the need and that 3) the force used was objectively unreasonable." Ballard v. Burton, 444 F.3d 391, 402 (5th Cir. 2006) (internal quotations omitted). While the injury suffered by a plaintiff must be more than *de minimis*, the threshold for what constitutes an injury is subjective and is "defined entirely by the context in which the injury arises." Schmidt v. Gray, 399 Fed. Appx. 925, 928 (5th Cir. 2010).

The Court agrees with the Defendants that injury resulting from "handcuffing too tightly, without more, does not amount to excessive force." Flores v. City of Palacios, 381 F.3d 391, 398 (5th Cir. 2004). However, to fully determine whether Washington suffered a psychological injury, the Court must assess the objective reasonableness of the arrest or seizure by balancing the "amount of force used against the need for force." Id.

Taking the facts pled as true, at the time of arrest, Washington was asleep and unarmed. He was placed on administrative leave earlier that day which required him to turn in his handgun and report to the station upon the request of a supervisor. See Record Document 11 at 2. Additionally, Washington cites a SPD General Order prohibiting officers from drawing their weapons unnecessarily and requiring officers to use other options of force prior to drawing a weapon unless lethal force is needed. See Record Document 11 at 3. From the meager facts presented at this stage, the Court cannot conclude the presence or absence of exigent circumstances that warranted a show of force by police. Thus, the Court expresses no conclusion regarding Washington's claim of injury from fear.

At this very early stage, Washington has pled enough information for the Court to find his excessive force claim passes the plausibility test. However, because the Court believes the question of whether Sergeant Jones is protected by qualified immunity is inextricably intertwined with the merits of Washington's claim for false arrest, the Court declines to rule on the availability of qualified immunity as to the excessive force claim at this point. The issue of qualified immunity is better reserved for further motion practice where the Court is presented with more detailed facts surrounding Washington's arrest.

2. Equal Protection

To successfully plead an equal protection violation, a plaintiff must present factually supported allegations that "1) he was treated differently than persons similarly situated to him, and 2) that such treatment stemmed from discriminatory intent." Williams v. Bramer, 180 F.3d 699, 705 (5th Cir. 1999) (citation omitted). Discriminatory intent requires a showing that "the decision maker singled out a particular group for disparate

treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Id.

The Court previously requested Washington provide further evidence of instances where similarly situated individuals were treated differently by both Sergeant Jones and Chief Raymond. See Record Document 10. In his Amended Complaint, Washington alleges that on the same day as his arrest, Sergeant Jones "waited until almost midnight to arrest another black SPD officer," which Washington believes shows Sergeant Jones' "propensity to treat black officers differently than he treats white officers." Record Document 11 at 2. He further explains that Sergeant Jones' "discriminatory and oppressive" treatment was known within the SPD. Id. at 4. Lastly, Washington contends that neither Chief Raymond nor Sergeant Jones have arrested white officers after the charges against them have been rejected by the district attorney, as was the case in his arrest. See id. at 7. According to Washington, Chief Raymond has "erroneously stated publically [sic] in matters involving charges rejected by the District Attorney's office against black police officers that he believed he could still charge those officers with crimes." Record Document 1 at 6.

The Court believes Washington's Complaints lack support for his equal protection claim. His allegations fail to show that Sergeant Jones and Chief Raymond acted with the requisite discriminatory intent. What's more, his statements alleging disparate treatment are merely conclusory and overly broad. While the standard for overcoming a Rule 12(b)(6) motion does not require minute detail, "an unadorned, the-defendant-unlawfully-harmed-me accusation" is not enough. Twombly, 550 U.S. at 555, 127 S.Ct. at 1955. For

this reason, Washington's claims against Sergeant Jones and Chief Raymond in their individual capacities for violating his right to equal protection are **DISMISSED**.

3. Retaliation

The Defendants seek dismissal of Washington's claim for retaliation which he appears to make pursuant to Section 1983. The Defendants, however, also include in their argument the potential for a claim under Title VII (42 U.S.C. § 2000e-5). The Court will address both arguments.

Under Section 1983, a plaintiff must allege "(1) he was engaged in constitutionally protected activity, (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against his exercise of constitutionally protected conduct." Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002).

The Court believes that Washington's retaliation claim against Chief Raymond in his individual capacity falls short of the plausibility threshold. His sole assertion that Chief Raymond placed him on supervised observation and "took these steps as retaliation" for Washington's lawsuit is a legal conclusion which is not entitled to an assumption of truth. See Iqbal, 556 US. at 678-79, 129 S.Ct. 1937. Furthermore, his allegations fail to show how any protected activity was curtailed to a point where he wished to disengage. Though he was monitored by his superiors, Washington was still able to perform his daily duties and responsibilities as a police officer. Therefore, Washington's Section 1983 retaliation claim is **DISMISSED**.

As for any potential retaliation claim Washington seeks to make under Title VII, the claim is **DISMISSED** because he has failed to exhaust the administrative remedies available to him.

4. Monell/Unlawful Practices and Policies

Lastly, Washington makes numerous claims against Chief Raymond in his official capacity and the City, alleging that the entity's lack of policies, unofficial policies, and failure to properly train the SPD officers resulted in the violation of his Fourth Amendment right. Because a suit against Chief Raymond in his official capacity is treated as a suit against the entity for which he serves as an agent, the Court will address these claims together. See Goodman v. Harris County, 571 F.3d 388, 395 (5th Cir. 2009).

Washington first claims that his alleged false arrest is attributable to the City's lack of an official policy prohibiting officers from conducting arrests after the district attorney rejects charges against the individual. To hold a municipality liable under Section 1983, a plaintiff must show 1) the existence of a policy or custom, or lack thereof, 2) of which a policymaker had actual or constructive knowledge, and 3) that the policy or custom was the "moving force" behind the alleged constitutional violation. See Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037 (1978).

The Court takes issue with Washington's first allegation that the City's lack of policy prohibiting arrests following the rejection of charges by the district attorney encouraged his false arrest. First, he mistakenly draws the conclusion that to arrest an individual, charges must be brought against him by the district attorney. While it is true that charging an individual for criminal conduct may trigger the need for a warrant and subsequent arrest, officers may conduct an arrest irrespective of the district attorney's involvement. A

warrant for arrest can be issued based on other evidence of probable cause or an arrest without warrant can occur due to the existence of exigent circumstances.

Furthermore, Washington's own Amended Complaint appears to negate his argument by explaining that a policy *was* in place to address how officers may conduct a forcible entry and arrest when no warrant exists, as was the case here. He references the SPD General Order which instructs officers on how to lawfully enter a structure without a warrant with either consent or exigent circumstances. See Record Document 11 at 2. The Court believes Washington has not pled sufficient facts to draw a connection between the City's lack of policy under a very specific factual circumstance and the alleged constitutional violation conducted by its agents.[5] Washington's lack of policy claim is **DISMISSED**.

Washington next contends that Chief Raymond created an unofficial policy for the City when he repeatedly stated his belief that "he could file charges against another *black* officer after they were rejected by the District Attorney." Record Document 11 at 5 (emphasis added). Washington argues that both Chief Raymond and the City are liable for his false arrest as result of this unofficial policy. While the Amended Complaint alleges Chief Raymond's statements equate to a policy of falsely arresting individuals even though charges have been rejected, it appears to the Court that Washington is arguing that Chief Raymond's statements created a policy of falsely arresting only black officers.

---

[5] Washington also claims that the district attorney's office "failed to order Sergeant Jones to return his property that was illegally taken. Therefore, Chief Raymond is also responsible for the prolonged illegal possession of Washington's phone," and he argues the City's lack of policy regarding the return of property contributed to his loss of phone. Id. Washington fails to present sufficient evidence connecting the City's lack of policy and the withholding of his phone nor does he explain how this constitutes a constitutional violation. Therefore, the withholding of property claim is **DISMISSED**.

The City can be held liable upon a showing that the policymaker with "final authority regarding the policy…issued a proclamation, policy or edict or that a custom was established through a course of conduct by the practices of municipal officials which are so permanent or well-established so as to virtually constitute law." Taylor v. City of Shreveport, 26,820 (La. App. 2 Cir. 4/7/95), 653 So. 2d 232, 236, writ denied, 95-1131 (La. 6/16/95), 655 So. 2d 333. Courts look to state law to determine whether a named defendant has final policymaking authority. See St. Louis v. Praprotnik, 485 U.S. 112, 124, 108 S.Ct. 915, 924 (1988).

Louisiana law states, "[t]he superintendent of police or commanding officer of the department may adopt regulations for the government of the department except substitutes." La. R.S. 33:2196. Washington has correctly named Chief Raymond as the policymaker with "final authority regarding the policy" for the SPD. Further, the Court believes at this stage he has pled facts sufficient to suggest that Chief Raymond's repeated statements could possibly be construed as a policy held by the SPD and the City. Taking the facts presented as true, Washington's claim barely survives the Rule 12(b)(6)'s plausibility standard but may be addressed in subsequent motion practice.

Addressing Washington's claims against Chief Raymond in his official capacity, the analysis is similar. Chief Raymond, in his supervisory capacity, cannot be held liable for the actions of his officers absent a showing of direct responsibility for the conduct and a causal connection between the conduct and the official. See Taylor, 26,820 (La. App. 2 Cir. 4/7/95), 653 So. 2d at 236. Direct responsibility equates to "actual or constructive knowledge, an inadequate response on the part of the supervisor so as to show deliberate indifference, or a tacit authorization of the alleged offensive practices by the supervisory

officer." Id. According to Washington's Complaints, Chief Raymond made the statements and authorized the alleged false arrest. Accepting these facts as true, Washington appears to present a plausible claim for Chief Raymond's liability in his official capacity. His claim may proceed to the next stage.

Washington's final claim against the City and Chief Raymond is one alleging that the two Defendants failed to provide adequate training to the SPD officers which resulted in his false arrest. See Record Document 11 at 6.  To be considered a "policy or custom" for which the municipality can be responsible, this failure to train must amount to a deliberate indifference to the rights of the individual with whom the police come into contact. See Goodman v. Harris County, 571 F.3d 388, 395 (5th Cir. 2009); see also City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 1204 (1989). To establish deliberate indifference, a plaintiff must "demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." Id.

Washington asserts that Chief Raymond has "systematically destroyed" the SPD training programs which has resulted in untrained officers and misconduct like Washington's false arrest. He also alleges that Chief Raymond and the City have failed to require any regular or updated training for its officers. The Defendants argue that Washington's claims lack proof of how the current training is deficient or any showing of a pattern of similar violations which would suggest deliberate indifference. See Record Document 13-1 at 9. Most importantly, the Defendants contend that Washington's pleadings are devoid of support which might connect the City's failure to train with any actual injury suffered by him.

The Court agrees with the Defendants. Though Washington provides a list of replacements and changes made by Chief Raymond in his official capacity, he has not shown a pattern of constitutional violations stemming from these changes. Washington must present "at least a pattern of similar incidents in which citizens were injured…" to attribute liability to Chief Raymond's and the City's "inadequate" training. Rodriguez v. Avita, 871 F.2d. 552, 554-55 (5th Cir. 1989). Washington presents no evidence of similar incidents beyond his unsupported conclusion that Chief Raymond's failure to ensure proper training "contributed to Sergeant Jones' aggressive mistreatment of Washington and other black officers." Record Document 11 at 6. Without more specific factual allegations, the Court believes Washington's failure to train claim must be **DISMISSED**.

## CONCLUSION

For the forgoing reasons,

**IT IS ORDERED** that the defendants' Motion for Partial Dismissal (Record Document 13) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FUTHER ORDERED** that the Motion for Partial Dismissal is **GRANTED** with respect to Washington's equal protection and retaliation claims against Sergeant Jones and Chief Raymond in their individual capacities and the lack of policies and failure to train claims against the City and Chief Raymond in his official capacity. These claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss is **DENIED** with respect to Washington's claims for excessive force against Sergeant Jones and the unofficial policy Monell claims against the City and Chief Raymond in his official capacity.

An order consist with this memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 15th day of February, 2022.

_S. MAURICE HICKS, JR., CHIEF JUDGE_
UNITED STATES DISTRICT COURT
